**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PEANUTS WORLDWIDE LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **No. 23 C 2965** |
| | ) | |
| **THE PARTNERSHIPS and** | ) | **Judge Rebecca R. Pallmeyer** |
| **UNINCORPORATED ASSOCIATIONS** | ) | |
| **IDENTIFIED ON SCHEDULE "A",** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Peanuts Worldwide LLC owns the trademarks and copyrighted designs for the iconic comic strip "Peanuts." Last year, Plaintiff filed suit against over a hundred Chinese and other foreign e-commerce vendors—a so-called "Schedule A" action—for selling or redistributing unauthorized Peanuts products. After obtaining the court's permission to serve Defendants via email and electronic publication under Federal Rule of Civil Procedure 4(f)(3), Plaintiff successfully moved for an entry of default and default judgment against those Defendants who failed to appear and were not voluntarily dismissed.

Two months after this judgment was entered, Defendant "Electrician Guy" appeared and moved to vacate the default under Rules 55(c) and 60(b). Defendant's main challenge to the judgment is that it was void for lack of adequate service of process under Rule 4(f) and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ("Hague Service Convention"). While this issue is hotly debated and would benefit from clarification on appeal, the court will follow the majority view in this district in holding that email service upon Chinese defendants is permissible. Thus, for the reasons stated below, Defendant's motion is denied.

**BACKGROUND**

Since its first appearance in newspapers in 1950, Charles Schultz's "Peanuts" has become one of the most popular and well-recognized cartoon franchises of all time, appearing in media ranging from classic television specials to new streaming series and public awareness campaigns.  (Compl. [1] ¶¶ 5–7.)  Plaintiff, a Delaware LLC, is the current rightsholder to various registered trademarks and copyrighted designs for the "Peanuts" brand and its characters, including Charlie Brown, Snoopy, Lucy, and others.  (*Id.* ¶¶ 6, 12, 18, Exs. 1, 2.)  It sells official Peanuts-branded merchandise on its webstore and on third-party online marketplaces like Amazon.  (*Id.* ¶ 9.)

Plaintiff filed this action on May 11, 2023 against 125 defendants who, it alleged, were selling or redistributing counterfeit Peanuts products from China (or other foreign jurisdictions) via online marketplaces such as AliExpress, Amazon, and Walmart Marketplace.  (*Id.* ¶¶ 21–26.)  These defendants were listed in a separate "Schedule A" filed concurrently under seal and were identified only by their "name / seller alias" and the URL for their online marketplace profile.  (*See* Schedule A to Compl. [2].)  Number 93 on this list was identified as "Electrician Guy" and associated with the URL "walmart.com/seller/101205996."  (*Id.* at 3.)

Plaintiff promptly moved the court for an ex parte temporary restraining order [14] and for permission to effectuate service by way of email and electronic publication as authorized by Rule 4(f)(3) [19].  In support of its TRO motion, Plaintiff submitted a sealed exhibit containing evidence of Defendants' allegedly infringing online listings [18].  Included in this exhibit was the below screenshot of Defendant Electrician Guy's Walmart Marketplace listing for "10 pcs Sno²py Croc Shoe Charms,"[1] as well as a screenshot of Electrician Guy's Walmart Marketplace seller profile,

---

[1]        Croc shoe charms, or "jibbitz," are small stylistic accessories that can be plugged into the holes of "Crocs" footwear.  *Jibbitz: A Lucky Charm for Crocs?*, Earnest Analytics (Aug. 10, 2021), https://www.earnestanalytics.com/insights/all-posts/jibbitz-a-lucky-charm-for-crocs.  Plaintiff alleges that the "2" footnote in the middle of the word "Snoopy" in the listing's title

which listed a physical address of "No. 3769, Yanxiang Road, Quijiang New District, Room 2702, Unit 1, Building 6, Hezhong, Quijiang City, Xian, Shaanxi 710000, China." (Ex. 4-1 to Decl. of Carrie J. Dumont [18-1] at 151–53.)



Plaintiff argued in support of its motion for alternative service that email would be a more effective and reliable way of serving Defendants, since sellers on e-commerce marketplaces often fail to list accurate physical mailing addresses but must typically provide verified email addresses in order to create online accounts and manage their sales to customers. (Decl. of Justin R. Gaudio [21] ¶ 2.) The court granted both of Plaintiff's motions and entered an order on May 16, 2023 that (1) enjoined Defendants from further infringement, (2) ordered the hosts of their e-commerce

---

is a "common way for counterfeiters to evade detection." (Pl.'s Resp. in Opp'n to Mot. to Vacate [46] at 2.)

platforms to temporarily freeze their accounts and provide expedited discovery regarding their identities and contact information, and (3) approved Plaintiff's request for alternative service. (*See* Sealed Temporary Restraining Order [23] (hereinafter "TRO").)

On May 24, 2023, Plaintiff filed proof of service in the form of a declaration from counsel stating that all Defendants listed in an accompanying exhibit—including Electrician Guy—had been emailed a summons and a link to a website containing the complaint, TRO, and other related documents. (Decl. of Service [27-1] ¶¶ 3–5; *id.* Ex. A [27-2] at 3.) Plaintiff also moved to convert the TRO into a preliminary injunction [25]; the court granted this motion and ordered that Plaintiffs' Schedule A (as well as other documents identifying Defendants) be unsealed and that Defendants' names be added to the docket [28].[2]

As often happens in Schedule A cases, most of the Defendants failed to appear before the 21-day deadline to answer under Rule 12(a) elapsed. *See BRABUS GmbH v. Individuals Identified on Schedule A Hereto*, No. 20 CV 3720, 2022 WL 7501046, at *1 (N.D. Ill. Oct. 13, 2022) ("Most of the time, in Schedule A cases, the defendants do not respond to the complaint, and the plaintiffs later roll in and ask for a default judgment."). Plaintiff moved for entry of default and a default judgment on June 29, 2023 [32]; the court granted this motion and entered a final judgment order the following day [36, 37].

Roughly two months later, on September 4, 2023, Defendant Electrician Guy filed an appearance [41] and motion to vacate the entry of default and default judgment [42]. Defendant argued in its motion that the default should be vacated both because Electrician Guy "did not know" of the lawsuit and judgment against it, and because it had not been validly served with

---

[2]     The court acknowledges that this instruction does not appear to have been fully implemented. While Defendants' names—including Electrician Guy's—were added to the docket on May 26, 2023, the documents on file that identify Defendants (including Plaintiff's original Schedule A [2], its exhibits to the TRO motion [18], and the TRO [23]) have remained under seal. The court apologizes to the parties for this clerical error and has issued a separate order filed concurrently with this opinion directing that the record in this case be unsealed.

process. (Mem. of Law by "Electrician Guy" in Supp. of Mot. to Vacate Default J. (hereinafter "Def.'s Mem.") at 6.) Electrician Guy did not, however, submit any declaration with this motion explaining whether it had ever discovered Plaintiff's emails—or more broadly, how it had become aware of the lawsuit and judgment at all. The only hint given was that Defendant's "overseas counsel" had learned of the judgment "on or about August 25, 2023, and upon being retained . . . immediately move[d]" to vacate it. (Def.'s Mem. at 3.)

Plaintiff filed an opposition to the motion a few weeks later, supported by a sworn declaration from its counsel. (Pl.'s Resp. in Opp'n to Mot. to Vacate [46] (hereinafter "Pl.'s Opp'n"); Decl. of Marcella D. Slay [47] (hereinafter "Slay Decl.").) This declaration asserted that Defendant had "advertised, offered for sale, and sold counterfeit products infringing Plaintiff's SNOOPY trademarks and copyrighted design on its Walmart.com store . . . ." (Slay Decl. ¶ 2.) Counsel again attached the screenshots of Defendant's allegedly infringing products and Walmart seller profile that had previously been submitted with Plaintiff's TRO motion. (*Id.* Ex. 1.) Plaintiff's counsel further attested that while they had obtained both email and physical addresses for "Electrician Guy" from Walmart, they had been unable to find the physical address on a Google Maps search. (*Id.* ¶ 5.) Accordingly, Plaintiff's counsel reported it had served Defendant via email on May 24, and sent two more follow-up emails notifying Defendant of Plaintiff's motion for a preliminary injunction (also on May 24) and motion for entry of default and default judgment (on June 29). (*Id.* ¶¶ 7–8, 10.)

## STANDARD OF REVIEW

Rule 60(b) lists six independent grounds for relief from a final judgment or order, including "mistake, inadvertence, surprise, or excusable neglect" under Rule 60(b)(1) and a "void" judgment under Rule 60(b)(4). Relief from a default judgment is typically limited to "exceptional circumstances" that justify the defendant's failure to take timely action, and the district court has "considerable latitude" in evaluating motions brought under Rule 60(b)(1). *Wehrs v. Wells*,

688 F.3d 886, 890 (7th Cir. 2012). To prevail under this subsection, the defendant must show "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 630 (7th Cir. 2009) (citation omitted).

This discretion is much more limited, however, if the defendant has challenged the court's judgment as void under Rule 60(b)(4). *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 855 (7th Cir. 2011) (citation omitted). Because a court lacks personal jurisdiction over a party who was not adequately served with process, any judgment against such a party is automatically void and "it is a per se abuse of discretion to deny a motion to vacate that judgment." *Relational, LLC v. Hodges*, 627 F.3d 668, 671 (7th Cir. 2010). Further, it is irrelevant whether the defendant took "quick action" to remedy the default since motions under Rule 60(b)(4) have "no time limit, at least absent exceptional circumstances." *Philos Techs.*, 645 F.3d at 857 (citation and internal quotation marks omitted).

Defendant's motion appears to argue both Rule 60(b)(1) and 60(b)(4) as bases for relief: both that Defendant's failure to timely discover the lawsuit and judgment was excusable based on a lack of adequate notice, *and* that the judgment itself is void for lack of valid service of process. But Defendant only mentioned Rule 60(b)(1) and related caselaw in its opening brief, though it backtracked in its reply (after Plaintiff argued that any arguments under Rule 60(b)(4) were waived) and claimed that its motion was properly brought under both subsections. Regardless, since Defendant clearly raised a jurisdictional basis for vacating the judgment in its initial brief, the court reviews its motion under the standards that govern both Rule 60(b)(1) and Rule 60(b)(4).

## DISCUSSION

### I. Form of Summons and Proof of Service

Defendant first argues that—even assuming the court's approved method of electronic service was proper—Plaintiff has not proven that it validly completed service using this method. These objections are easily disposed of.

6

Defendant contends that Plaintiff was required to obtain an individual summons for each defendant listed on its "Schedule A" under Rule 4(b), and that each of these summonses needed to include the case's caption formatted in accordance with Rule 10(a). Both of these arguments were recently rejected in *Klauber Bros., Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A"*, No. 23 C 10407, 2024 WL 182209 (N.D. Ill. Jan. 17, 2024). As the *Klauber* court pointed out, Rule 4(b) specifically "contemplates a single summons 'addressed to multiple defendants,' " and Rule 10(a)'s caption requirement "relates to 'pleadings,' not the summons." *Id.* at *3. Plaintiff's method of service is consistent with this court's order, which instructed the Clerk of Court "to issue a *single original summons* in the name of 'The Partnerships and all other Defendants identified in the Complaint' that shall apply to all Defendants." (TRO ¶ 7 (emphasis added).) These Defendants were individually listed in Plaintiff's concurrently filed Schedule A, as is standard practice in this district. The court finds no technical defect with Plaintiff's summons under either Rule 4(b) or 10(a).

Defendant also contends that Plaintiff failed to provide adequate proof of service. Rule 4(*l*) directs that service under Rule 4(f)(3) be proven either "by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee." FED. R. CIV. P. 4(*l*)(2). Because "[a] receipt signed by the addressee is usually not available when service is made by e-mail," the more common means of proving service via this method is a server's signed declaration attesting that they sent the email to the defendant's address and did not receive a "bounce back" message. *Strabala v. Zhang*, 318 F.R.D. 81, 116 (N.D. Ill. 2016). Plaintiff's counsel submitted such a declaration: counsel states that they served the email address associated with Defendant's Walmart Marketplace account ("yumuhe 8957@163.com") on May 24, 2023. (Decl. of Service [27-1] ¶ 4; Ex. A [27-2] at 2.) Because Plaintiff's counsel specified the email addresses to which service was made, its "signed return of service constitutes *prima facie* evidence of valid service which can be overcome only by strong

and convincing evidence," and "[a]n uncorroborated defendant's affidavit merely stating that he [has] not been personally served with summons is insufficient to overcome the presumption favoring the affidavit of service." *Strabala*, 318 F.R.D. at 116 (citations omitted).[3]

Here, Defendant has failed to provide any affidavit at all—only an oblique statement in its opening brief that it "did not know about the case" (Def.'s Mem. at 6), which is not admissible evidence.[4] *See United States v. Stevens*, 500 F.3d 625, 628–29 (7th Cir. 2007) ("[I]t is universally known that statements of attorneys are not evidence.") (citation omitted). Notably, Defendant fails to allege—whether in a sworn declaration or otherwise—that the email address Plaintiff used was incorrect or that it was unable to timely access this address's inbox.[5] And while Defendant submits screenshots from the website "www.chinafirewalltest.com" suggesting that the site used by Plaintiff's counsel to publish the complaint and other case documents online is blocked in China, the court has no way of verifying this test's reliability. *Klauber*, 2024 WL 182209, at *4 (rejecting an equivalent argument based on a test from the same website). There are several reasons to doubt Defendant's assertion on this front: Plaintiffs' counsel attests that they have used the same website to successfully serve "thousands of China-based defendants" over many years— including, it appears from the docket, other defendants in this case. (Slay Decl. ¶ 11; Pl.'s Opp'n at 6 n.5; *see* Notice of Voluntary Dismissal [31] (dismissing claims against Defendants 21, 46, 95,

---

[3]     The *Strabala* court found that this burden-shifting scheme did not apply where the declaration of service did not specify the email addresses to which the summons had been sent. *Strabala*, 318 F.R.D. at 116. This is not a problem here, in light of counsel's exhibit listing all emails served. (*See* Decl. of Service, Ex. A [27-2].)

[4]     While Defendant asserts in its motion that its *U.S. counsel* did not learn about the default judgment until August 25, 2023 (Mot. at 3), this says nothing about when *Defendant* itself became aware of the judgment.

[5]     Although Defendant's counsel argues in the motion to vacate that "a google search of that address returns no results (except for this lawsuit on 'PacerMonitor')," the court presumes counsel could have obtained direct information about Defendant's access (or lack of access) to this account by communicating with their client. (Def.'s Mem. at 9.)

and 96 on Plaintiffs' Schedule A); Consent Judgment [38] (approving settlement of claims against Defendant No. 97).) And Defendant Electrician Guy itself has been involved in multiple other recent Schedule A cases in this district, in which it responded to similar electronic service before the entry of a final judgment. (*See* [61] in *Those Characters from Cleveland, LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Assocs. Identified on Schedule A Hereto*, No. 23 C 1923 (N.D. Ill. Aug. 8, 2023.); [60] in *Wham-O Holding, Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 23 C 2259 (N.D. Ill. Aug. 22, 2023); [58] in *Emoji Co. GmbH v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 23 C 2317 (N.D. Ill. Aug. 22, 2023).)[6]

Finally, Defendant contends that Plaintiff should have been required to (1) translate the emailed summons into Chinese, (2) send it multiple times, and (3) confirm that it was not "bounced back" as undeliverable. None of these steps are required by law, and none were contemplated in the court's order approving service via email and electronic publication. (*See* TRO [23] ¶ 7.) In general, the manner of alternative service under Rule 4(f)(3) "is committed to the sound discretion of the district court" and may vary based on "the facts and circumstances of the particular case." *Strabala*, 318 F.R.D. at 114 (citations and internal quotation marks omitted). While all methods of service must satisfy the baseline constitutional requirement of being

---

[6] Defendant submitted motions to dismiss in all three of these cases in which it made largely identical arguments to those presented here in support of its motion to vacate the judgment, including both insufficient proof of service and inadequate form of service under the Hague Convention. (*See* [77] in No. 23 C 1923; [69] in No. 23 C 2259; [68] in No. 23 C 2317.)While the plaintiffs in *Wham-O* and *Emoji* voluntarily dismissed their claims against Electrician Guy before either court could issue a ruling (*see* [80] in No. 23 C 2259; [89] in No. 23 C 2317), the *Cleveland* court denied Defendant's motion in October 2023, finding that "service was proper (and properly accomplished)" by electronic means" ([89] in No. 23 C 1923). Since then, Electrician Guy does not appear to have actively litigated that case. It reached a settlement in principle with the *Cleveland* plaintiff in January 2024, but subsequently failed to respond to multiple follow-up emails or appear at hearings; as of June 2024, the plaintiff has filed a renewed motion for default judgment. (*See* [110, 124] in No. 23 C 1923.)

"reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections," the court has no trouble concluding that this standard was met here. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016–17 (9th Cir. 2002) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)) (finding "[w]ithout hesitation" that service by email was "constitutionally acceptable" as "the method of service most likely to reach" an overseas e-commerce defendant).

Starting with translation, Defendant cites several cases (which the *Klauber* court also considered and rejected) in which "courts, acting in their discretion and based on the circumstances, ordered that a translated notice be provided." *Klauber*, 2024 WL 182209, at *4 (citing Order Authorizing Serv. by Publ'n [19], *Langford v. Juárez Cartel,* No. 1:20-cv-00132 (D.N.D. Oct. 28, 2020), and Order [23], *Mwami v. United States*, No. 1:99-cv-00125 (D.D.C. Aug. 2, 1999)).  Both of these cases involved vastly different circumstances, concerning service via newspaper publication upon overseas defendants without known contact information[7]—while in this case, Defendant "regularly conducts business in English," "accept[s] payment in U.S. dollars," and maintains a registered email address in connection with its online seller profile. *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112 (VSB), 2018 WL 4757939, at *6 (§D.N.Y. Sept. 30, 2018); *see Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 WL 2633317, at *1, *4 (N.D. Ill. June 25, 2021) (concluding that email service to addresses "registered with defendants' eBay accounts" was "reasonably calculated under all the circumstances" to provide adequate notice).

For the same reason, the court does not agree with Defendant that Plaintiff was required to send the email "at least six times," as is often required for service by newspaper publication. Defendant cites only one out-of-circuit Schedule A case in which a court's Rule 4(f)(3) order

---

[7]     Specifically, *Langford* involved service upon Mexican cartel members via Spanish-language newspapers, and *Mwami* involved service upon Osama Bin Laden and Al Qaeda via publication in international English and Arabic newspapers.

required a plaintiff to effect service via multiple emails. (*See* Decl. of Proof of Serv. [125] ¶ 5, *Purple Innovation LLC v. Chuang Fan Handcraft Co., Ltd.*, No. 2:22-cv-00620-HCN-DAO (D. Utah May 17, 2023) (attesting that service was made via emails sent to each defendant "three times per week for two consecutive weeks")). But as the *Klauber* court noted, it makes no sense to "[c]ompar[e] service by sending an email to an individual email address that indisputably belongs to the defendant to service by publishing a notice in a newspaper where the defendant may be among hundreds of thousands of readers . . . ." *Klauber*, 2024 WL 182209, at *5. In any event, Defendant did receive at least three emails prior to the entry of judgment—the May 24, 2023 summons, the notice of Plaintiff's motion for a preliminary injunction sent the same day, and the June 29, 2023 notice of Plaintiff's motion for entry of default—on top of any additional notice that Walmart may have provided in freezing Defendant's online account pursuant to the court's injunction. (*See* Slay Decl. ¶¶ 7–10.)

Defendant is on slightly more solid footing as to the "bounce back" confirmation: Plaintiffs failed to confirm in their May 24, 2023 declaration that the email to Electrician Guy (or for that matter, any Defendant) was successfully delivered, which several cases in this district have required as proof of effective service. *See Strabala*, 318 F.R.D. at 116; *Ouyeinc*, 2021 WL 2633317, at *3. It would have been better practice for Plaintiff's counsel to do so, but Defendant has not shown that this error was prejudicial; as noted, Defendant has not submitted any declaration or other evidence contesting that the email did in fact reach its inbox. The court thus finds that Plaintiff has adequately proven it served Defendant using the method of electronic service approved in the court's May 16, 2023 order.

## II.    Timeliness of Defendant's Motion

If Rule 60(b)(1) were the only applicable standard, Defendant's failure to adequately contest actual notice of the lawsuit and judgment would create a timeliness issue. Its motion to vacate was filed nine weeks after the entry of judgment, and courts in this district have found that

shorter delays than this were not sufficiently "quick action" to disturb default judgments against Schedule A defendants. *See Fairly Odd Treasures, LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 20 C 1386, 2020 WL 8093511, at *2 (N.D. Ill. Oct. 28, 2020) (finding six weeks to be an unreasonable delay); *Chapter 4 Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 20 C 6115, 2021 WL 1906461 (N.D. Ill. May 12, 2021) (finding four weeks unreasonable).

If Defendant had established that it only discovered the judgment later on due to extenuating circumstances, that might render its delay excusable. *See Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994) ("If, for instance, the defendant (through no fault of his or her own) did not even become aware of the default judgment until one month (or six months) after its entry, maybe trying to vacate the judgment at that late date would be quick enough to satisfy the standard."); *Antsy Labs, LLC v. Individuals Identified on Schedule A*, No. 21 C 3297, 2022 WL 4325291, at *3 (N.D. Ill. Sept. 19, 2022) (finding good cause and quick action satisfied where defendant "had no knowledge of the lawsuit . . . based on the fact that its current business was never named as a defendant on Schedule A . . . [until] just eight days before the Court entered default judgment"). But as noted, Defendant has failed to submit any admissible evidence on this score other than a vague (and not fully credible) insinuation that it lacked access to Plaintiff's website due to Chinese internet restrictions. It has thus failed to meet its burden under Rule 60(b)(1) of showing both "good cause" for its default and "quick action" to address it.

### III. Venue and Failure to State a Claim

This late filing has implications for several of Defendant's arguments that go to the "meritorious defense" prong of the Rule 60(b) test for vacatur, including that venue is improper and that Plaintiff's complaint fails to state a claim since it does not specifically describe Electrician Guy's (or any other Defendant's) alleged infringing conduct. Neither of these arguments are jurisdictional, and the court would be within its rights to treat both as waived by Defendant's delay.

12

*See Chapter 4 Corp.*, 2021 WL 1906461, at *3 ("The Court need not reach the merits of Defendant's Motion because it suffices that it cannot show either good cause or quick action . . . [E]ven if a meritorious defense exists it cannot excuse carelessness."); *SEC v. Carebourn Cap., LP*, 339 F.R.D. 510, 514 (N.D. Ill. 2021) ("It is doubtful that a belated objection to venue is properly raised through a Rule 60(b)(4) motion, as improper venue does not affect jurisdiction.").

Even if the court were to consider these arguments, neither is persuasive. Defendant's challenge to venue is a nonstarter: as a nonresident of the United States, it has no rights under the venue laws. *See* 28 U.S.C. § 1391(c)(3) (providing that a "defendant not resident in the United States may be sued in any judicial district"); *Michael Grecco Prods. Inc. v. ImageSelect B.V.*, No. LACV2207398JAKJPRX, 2024 WL 1640911, at *11 (C.D. Cal. Mar. 11, 2024) (noting that 28 U.S.C. § 1400(a)'s separate venue provision for copyright cases "does not alter the application of . . . § 1391(c)(3)"). As to Defendant's attack on the complaint, this argument might have more purchase on a motion to dismiss under Rule 12(b)(6), which asks whether the plaintiff has pled sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is true that the specific factual content supporting Plaintiff's infringement claims against Electrician Guy was attached to a separate docket filing (the TRO motion) rather than to the complaint itself. But at this point, now that a default has already been entered, Electrician Guy cannot rely on such a formalistic argument: in order to justify disturbing the court's judgment, it has the burden of showing that it has a sufficiently "meritorious defense" to Plaintiff's underlying claims. And all indications are, based on the screenshot evidence in the record, that Electrician Guy has in fact infringed Plaintiff's trademarks and copyrights with its "Sno$^2$py" products.

Defendant's challenge to the alternative method of service used in this case, however, cannot be disposed of so easily. Unlike the prior two defenses, it *is* jurisdictional and cannot be

waived as untimely under Rule 60(b)(4). *See Philos Techs.*, 645 F.3d at 855. The court now turns to this more difficult question.

## IV. Validity of Electronic Service

Defendant's final attack on the judgment is that service in China via email and electronic publication is improper under Rule 4(f) and the Hague Service Convention. While "the issue is not free of doubt" and would benefit from clarification on appeal, the court stands by its initial conclusion—consistent with that of the majority of courts in this district—that such service is permissible. *NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 798 (N.D. Ill. 2021), *aff'd on other grounds sub nom. NBA Props., Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022).[8]

### A. The Hague Service Convention Applies

Rule 4(f) provides that individuals in foreign countries may be served (1) "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents"; (2) "by a method that is reasonably calculated to give notice," if there is "no internationally agreed means"; or (3) "by other means not prohibited by international agreement, as the court orders." FED. R. CIV. P. 4(f).

The Hague Service Convention, to which both the United States and China are parties, was adopted in 1965 to "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017); *see Status Table*, Hague Conf. on Priv. Int'l L. (updated Mar. 21, 2024), https://www.hcch.net/en/instruments/

---

[8] The Chinese defendant in *NBA Properties* challenged the court's personal jurisdiction based on both a lack of "minimum contacts" and invalid service of process under the Convention. While the district court ruled in the plaintiff's favor on both issues, the defendant chose to appeal only the former issue to the Seventh Circuit. (*See* Brief and Short Appendix of Defendant-Appellant [16], *NBA Props., Inc. v. HANWJH*, No. 21-2909, 2022 WL 541155 (7th Cir. Jan. 7, 2022).)

conventions/status-table/?cid=17 (listing contracting parties). The Convention's "primary innovation" is a uniform method of service that "requires each state to establish a central authority to receive requests for service of documents from other countries." *Id.* at 275; *see* Hague Service Convention arts. 2–7, 20 U.S.T. at 362–63. But the Convention also contemplates certain other methods of service: Article 10 of the Convention, for example, allows for service through "postal channels" and through "judicial officers, officials, or other competent persons," provided that the country in which service is to be effected (the "receiving country") has not objected to these methods.[9] *Id.* The Supreme Court has held that the Convention "specifies approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash*, 581 U.S. at 273 (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698 (1988)).

The first step, then, is determining whether the Convention does in fact apply in this case. Article I of the Convention states that it "shall not apply where the address of the person to be served with the document is not known." Hague Service Convention art. 1, 20 U.S.T. at 362. Before making this finding, however, the court must assess whether Plaintiff has made "reasonably diligent efforts to ascertain and verify defendant's mailing address." *NBA Props.*, 549 F. Supp. 3d at 796. "[R]easonable diligence" generally requires that the plaintiff "ha[ve] attempted to obtain [the defendant's] address in a variety of ways." *Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1391 (S.D.N.Y. 2022) (citation and internal quotation marks omitted), *appeal dismissed sub nom. Smart Study Co. v. HAPPY PARTY-001*, No. 22-1810-CV, 2023 WL 3220461 (2d Cir. May 3, 2023).

Here, the screenshots of Defendant's Walmart Marketplace profile in the record show a physical address of "No. 3769, Yanxiang Road" in the city of Xi'an in China's Shaanxi Province.

---

[9] Other provisions of the Convention allow for service by diplomatic or consular agents, by methods mutually agreed upon by contracting states, and by methods specifically authorized by a contracting state's internal laws. *See* Hague Service Convention arts. 8, 11, 19, 20 U.S.T. at 363–65.

(*See* Ex. 4 to Decl. of Carrie J. Dumont [18-1] at 152.)  Since Plaintiff filed these screenshots with its initial TRO motion, it would have already had access to this address by the time it moved for alternative service by email.  *Cf. Roadget Bus. Pte. Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 23 C 17036, 2024 WL 1858592 (N.D. Ill. Apr. 29, 2024) (finding email service appropriate where defendants' physical addresses had not clearly been made available online at the time of plaintiff's motion).  Plaintiff tries to argue that this address is "unknown or reasonably uncertain" because Plaintiff's counsel was unable to find it on Google Maps, but this is not enough to show reasonable diligence: as Defendant points out, Google's search products do not consistently work in China. (*See* Aff. in Further Support of Electrician Guy's Mot. to Vacate Default J., Ex. B [48-3].)  In a declaration accompanying its reply brief, Defendant provides screenshots from the Chinese search engine Baidu, as well as from Bing Maps, showing a result at the listed address in Xi'an.  (*Id.* Ex. A [48-2]; *id.* Ex. C [48-4].)  This evidence does not necessarily prove that this address is a more *reliable* means of reaching Defendant than email, but it is sufficient, in the court's view, to establish that Defendant has at least one "known" address such that the Hague Service Convention applies.

## B.      Electronic Service is Not "Prohibited" by the Convention

This does not mean, however, that electronic service was necessarily improper.  Rule 4(f)(1) provides for overseas service through the Hague Service Convention's official channels, but Rule 4(f)(3) also allows for service by any other means "not prohibited by international agreement."  Rule 4 is not written in a way that suggests an order of preference among these options, and the majority view—endorsed by both the Ninth and Fifth Circuits—is that the Rule does not require a party to "attempt service under the Convention before seeking a court order directing alternative service."  *NBA Props.*, 549 F. Supp. 3d at 796; *see Rio*, 284 F.3d at 1015; *Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161, at *3 (5th Cir. Feb. 14, 2022); *see*

16

*also* 4B Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1134 n.2 (4th ed.) (collecting cases).

Some courts have disagreed, and have read Rule 4's Advisory Committee notes to suggest that, where the Convention applies, a plaintiff must first attempt service under its procedures before requesting alternative service under Rule 4(f)(3). *See, e.g.*, *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 986 (N.D. Cal. 2020); *cf. Strabala*, 318 F.R.D. at 114 (holding that service under Rule 4(f)(3) was proper where plaintiff had already attempted service through the Convention without success); *Parsons v. Shenzen Fest Tech. Co.*, No. 18 CV 08506, 2021 WL 767620, at *3 (N.D. Ill. Feb. 26, 2021) (same).[10] But there is some ambiguity in the commentary[11] and, in any event, the comments cannot trump the text of the Rule, which contains "no indication of a hierarchy in the text or structure of" its three subsections. *NBA Props.*, 549 F. Supp. 3d at 796 (citation omitted). Accordingly, the court concludes that Plaintiff

---

[10]    Defendant cites *Strabala* in arguing that Plaintiff could not validly pursue service under Rule 4(f)(3) before first attempting service under the Convention. But the *Strabala* court itself cited with approval a D.C. district court case holding that the plaintiff was "not required to first demonstrate a minimum threshold effort to serve Defendants via . . . the Hague Convention," though it had in any event satisfied this burden by attempting to do so. *Strabala*, 318 F.R.D. at 114–15 (citing *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 16 (D.D.C. 2016)).

[11]    The Committee notes state that "[u]se of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service." FED. R. CIV. P. 4(f) advisory committee's note to 1993 amendment. They describe Rule 4(f)(3) as applicable in situations where these procedures have failed, such as if "the foreign country's Central authority [fails to] effect service within the six-month period provided by [Article 15 of] the Convention" or "refus[es] . . . to serve a complaint seeking punitive damages or to enforce the antitrust laws of the United States." *Id.* But the Committee also states that service under Rule 4(f)(3) may be appropriate "in cases of urgency if convention methods will not permit service within the time required by the circumstances." *Id.* At least some courts have interpreted this as a reference to Article 15's statement that "the judge may order, in case of urgency, any provisional or protective measures," and have concluded that "[s]uch measures . . . include 'special forms of service.' " *Lonati, S.p.A. v. Soxnet, Inc.*, No. CV 20-5539-GW-JPRX, 2021 WL 9839476, at *3 (C.D. Cal. Sept. 20, 2021) (finding that email service was justified under Article 15's "urgency exception" where plaintiffs alleged "irreparable harm" from defendants' patent infringement).

was not required to exhaust the option of service under the Convention before seeking alternative service under Rule 4(f)(3).

Rule 4(f)(3) still requires, however, that the method of alternative service not be "prohibited by international agreement." It is well-understood that the Convention, adopted in 1965, "neither authorizes nor prohibits service by email—it is entirely silent on the issue." *Id.* at 797. District courts across the country have long wrestled with whether this silence should be construed as implicit permission or prohibition. *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:44 (5th ed.) (noting that "the case law is in conflict"); Michael A. Rosenhouse, Annotation, *Permissibility of Effectuating Service of Process by Email Between Parties to Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, 14 A.L.R. Fed. 3d Art. 8 (2016) (collecting cases on both sides).

One line of authority holds that if a country—such as China—has affirmatively objected to the alternative means of service listed in Article 10(a) of the Convention, this must be construed as an objection to service by email as well. *See, e.g., Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 391 F. Supp. 3d 816, 826–27 (N.D. Ill. 2019); *Habas Sinai Ve Tibbi Gazlar Istihsal A.S. v. Int'l Tech. & Knowledge Co., Inc.*, No. CV 19-608, 2019 WL 7049504, at *4 (W.D. Pa. Dec. 23, 2019); *Smart Study*, 620 F. Supp. 3d at 1396; *cf. CFTC v. Caniff*, No. 19 C 2935, 2020 WL 956302, at *6 (N.D. Ill. Feb. 27, 2020) (finding email service permissible where receiving country did *not* object to service under Article 10). China has indeed objected to Article 10(a) in its entirety, and at least one court in this district has found that these "objections likewise preclude email service." *Luxottica*, 391 F. Supp. 3d at 827; *see China – Central Authority & Practical Information*, Hague Conf. on Priv. Int'l L. (updated Jan. 17, 2023), https://www.hcch.net/en/states/authorities/details3/?aid=243 (listing China's objections). But as many other courts have noted, it is not at all obvious that the term "postal channels" in Article 10(a) should be read to include email—or that the rationales underlying a country's objection to

18

service by post would necessarily extend to service by email.  Notably, "email does not require physical intrusion on Chinese territory, which is China's express objection to the availability of postal service under the Hague Convention."  *Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021) (collecting cases that "reject[] the analogy of postal service to email service"); *Broan-Nutone LLC v. Conglom Hong Kong Ltd.*, No. 23-CV-393-JPS-JPS, 2023 WL 8784668, at *3 (E.D. Wis. Dec. 19, 2023) (describing *Luxottica*'s position as the minority view in the Seventh Circuit).[12]

Other courts have held that "[e]ven if China's objection to Article 10(a) does not by itself preclude e-mail service," the Convention "nonetheless prohibits a means of service that is not explicitly addressed by its terms."  *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 471 (D. Mass. 2020); *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 416 (N.D. Tex. 2020); *Duong v. DDG BIM Servs. LLC*, No. 823CV01551KKMJSS, 2023 WL 7209982, at *4–5 (M.D. Fla. Nov. 2, 2023).  This conclusion rests on a structural analysis of the Convention—in particular, its Article 11, which allows contracting states to mutually agree upon means of service "other than those provided for" in the Convention, and Article 19, which preserves states' rights to unilaterally authorize methods of service from foreign litigants via their own internal laws.  Hague Service Convention, arts. 11, 19, 20 U.S.T. at 363–65.  As the argument goes, these provisions would be rendered superfluous "if every undiscussed method is available by default."  *Duong*, 2023 WL 7209982, at *4; *see also*

---

[12]    The *Smart Study* court noted that China's own highest court has issued guidance instructing Chinese litigants to interpret other countries' Article 10(a) objections to service by "postal channels" as objection to service by email. *Smart Study*, 620 F. Supp. 3d at 1395 (citing *Minutes of the National Symposium on Foreign-Related Commercial and Maritime Trial Work* art. 11, Supreme People's Court of China (Jan. 24, 2022), https://cicc.court.gov.cn/html /1/218/62/409/2172.html).  But this guidance is not even clearly binding on China's own courts, let alone this court.  *See id.* at 1395 n.8 (noting that "these meeting minutes are not formal law in China").

*Anova*, 334 F.R.D. at 472 (finding it "unlikely that [the Convention's drafters] desired that the enumerated methods of service they agreed to could be superseded as soon as any new means of service became available"). But this is only one possible construction of the Convention's text: if the contracting states really wished to bind themselves to the "limited universe of alternative service methods" available in 1965, they might have included a more explicit statement clarifying that the means of service set forth in the Convention were intended to be exclusive. *Duong*, 2023 WL 7209982, at *4.

No Circuit Court of Appeals has yet directly addressed these relatively complex questions.[13] A definitive resolution of these issues on appeal would provide some much-needed clarity, particularly in light of the mounting volume of "Schedule A" cases against overseas defendants filed in this district every year. *See BRABUS GmbH*, 2022 WL 7501046, at *1. Whatever one's thoughts on the validity of electronic service, or on the Schedule A method of litigation more broadly, it is hardly fair for a Schedule A litigant's chances to rise or fall based on the identity of the judge to which that entity's case is assigned. The Seventh Circuit has already weighed in on the related question of whether foreign e-commerce vendors have sufficient "minimum contacts" with the forum to support personal jurisdiction in Schedule A cases. *See NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 627 (7th Cir. 2022), *cert. denied,* 143 S. Ct. 577 (2023). A similar ruling on electronic service of process—whether in this or another case—would help future litigants avoid substantial confusion.

---

[13]     The Ninth Circuit in *Rio* only interpreted Rule 4(f) and not the Convention itself, which "did not apply in th[at] case" since the receiving country in question (Costa Rica) was not a Convention signatory. *See Rio*, 284 F.3d at 1015 n.4. The Fifth Circuit has twice endorsed service by email on Chinese defendants, but did not substantively engage with the question of whether the Convention's text "prohibits" service by email in either case. *See Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018); *Viahart*, 2022 WL 445161, at *3. The Second Circuit recently declined an invitation to weigh in via an appeal from the district court's decision in *Smart Study*, finding that it lacked appellate jurisdiction. *See Smart Study Co.*, 2023 WL 3220461, at *4.

Absent controlling precedent on the issue, this court will follow the "overwhelming majority of courts in this district" in reaching the more straightforward conclusion that the Convention does not prohibit service by email. *Klauber*, 2024 WL 182209, at *3 (collecting cases). As the foregoing analysis shows, nothing in the texts of either the Convention or Rule 4(f) demands otherwise. And email offers many advantages over the older methods of service spelled out in the Convention: it is instantaneous, it does not require physical intrusion into the receiving country's territory, and it is often a more reliable way of reaching overseas e-commerce vendors who must maintain a verified email address in connection with their seller profiles. *See Hangzhou*, 2021 WL 1222783, at *3; *NBA Props.*, 549 F. Supp. 3d at 797; *Ouyeinc Ltd.*, 2021 WL 2633317, at *3. Further, email satisfies the unique "need for speed" that, for multiple reasons, exists in the Schedule A context. For one, Schedule A plaintiffs cannot, as a practical matter, wait up to six months—an eternity in the e-commerce world—to physically serve dozens of overseas defendants who often have no real defense to the merits of their infringement claims.[14] *See Rio*, 284 F.3d at 1018 ("Indeed, when faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process."). For another, Schedule A cases are initially filed under seal to prevent the defendant from dissipating assets or destroying evidence of infringement before the IP rightsholder can obtain a TRO and effectuate service. *See NBA Props.*, 549 F. Supp. 3d at 797 ("A speedy method of service in this case was justified to ensure, among other reasons, that the funds gained by the allegedly infringing conduct would be recoverable.") (citing *Strabala*, 318 F.R.D. at 114). But the

---

[14] Defendant argues that the "need for speed" is not present here because China's Ministry of Justice—that country's designated central authority under the Convention—has substantially sped up its processing times for foreign service requests since the COVID-19 pandemic. But Defendant's own sources cited in support of this point state that the Ministry was processing requests in "around 6 months" as of early 2023—the outer limit for permissible delay set forth by Article 15 of the Convention. *China - Central Authority & Practical Information*, Hague Conf. on Priv. Int'l L. (updated Jan. 17, 2023), https://www.hcch.net/en/states/authorities/ details3/?aid=243; *see* Hague Service Convention art. 15, 20 U.S.T. at 364.

strong public interest in favor of transparency counsels in favor of lifting this veil as soon as possible—and against waiting months for service through the Convention's formal channels. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view.").

The Supreme Court's interpretations of the Convention in *Volkswagenwerk Aktiengesellschaft v. Schlunk* and *Water Splash, Inc. v. Menon* "do not compel a contrary finding." *NBA Props.*, 549 F. Supp. 3d at 798. *Schlunk* found that Articles 15 and 16 of the Convention implicitly prohibit at least one method of service that is not mentioned in its text: the practice of "notification *au parquet*," in which court documents are deposited with a designated local official for service abroad *Schlunk*, 486 U.S. at 703; *see Anova*, 334 F.R.D. at 471 (reading *Schlunk* to "impl[y] that methods not explicitly addressed by the Convention may nevertheless be prohibited if they are inconsistent with its terms"). But the Court reached this conclusion based largely on the Convention's drafting history, which specifically singled out notification *au parquet* for elimination. *Schlunk*, 486 U.S. at 703–04. It is far from clear that this specific holding should be expanded to include methods of service that *did not exist* when the Convention was drafted. And the Court's "anodyne" statement that the Convention "pre-empts inconsistent methods of service" says nothing about whether email is in fact inconsistent. *NBA Props.*, 549 F. Supp. 3d at 798; *see Water Splash*, 581 U.S. at 273 (citing *Schlunk*, 486 U.S. at 699). Simply put, the Court has never held that the Convention prohibits email—or that its listed means of service must be treated as exclusive.

## C. Defendant Has Waived Arguments under Articles 15 and 16 of the Convention

For the first time in its reply brief, Defendant raises two new challenges to the court's default judgment based on Articles 15 and 16 of the Convention. "Article 15 sets forth certain conditions that must be met before a default judgment can be entered against a defendant served pursuant to the Convention." *Zhang v. Baidu.com Inc.*, 932 F. Supp. 2d 561, 565 (S.D.N.Y. 2013).

22

It states that a court may not enter judgment until (a) it has received sufficient proof that the summons and other documents were served or "actually delivered" in "sufficient time to enable the defendant to defend," or (b) at least six months have passed since service was attempted under the Convention without any proof of success, despite the plaintiff's best efforts. Hague Service Convention art. 15, 20 U.S.T. at 364. Defendant reads Article 15 to suggest that, since "there is no proper return of service as required under the Hague Service Convention" in this case, the earliest date upon which the court could enter a default judgment was November 24, 2023, six months after the email service from Plaintiff's counsel. (Def.'s Reply in Further Support of Mot. to Vacate [48] at 9.)

Article 16 creates a procedure for defendants who did not receive adequate notice of a lawsuit to "seek relief from a judgment that has become final." *Schlunk*, 486 U.S. at 703. It states that a judge "shall have the power to relieve the defendant from the effects of the expiration of the time for appeal from the judgment" if the defendant (1) "without any fault on his part, did not have knowledge of the document in sufficient time to defend, or knowledge of the judgment in sufficient time to appeal," and (2) has "disclosed a prima facie defense to the action on the merits." Hague Service Convention art. 16, 20 U.S.T. at 364–65. Petitions under Article 16 must be filed within a "reasonable time after the defendant has knowledge of the judgment," and contracting states may also require that they be filed within a certain period "not less than one year following the date of the judgment."[15] *Id.*

Defendant did not mention either Article 15 or 16 at all in its initial brief, and "district courts are entitled to treat an argument raised for the first time in a reply brief as waived." *O'Neal v.*

---

[15] In the United States, this deadline falls "(a) after the expiration of the period within which the same may be filed under the procedural regulations of the court in which the judgment has been entered, or (b) after the expiration of one year following the date of the judgment, whichever is later." Declaration of the United States, Aug. 24, 1967, https://www.hcch.net/en /instruments/conventions/status-table/notifications/?csid=428&disp=resdn.

*Reilly*, 961 F.3d 973, 974 (7th Cir. 2020) (finding that defendant waived argument under Rule 60(b)); *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005) ("[F]ailure to develop an argument until the moment of no return, i.e., the filing of a reply brief, constitutes waiver"). While the court must still consider new issues raised on reply if "they go to [its] subject-matter jurisdiction," *see Jester Commc'n, LLC v. Brunswick Corp.*, No. 18 CV 04847, 2018 WL 11191000, at *1 (N.D. Ill. Oct. 5, 2018), the essence of Defendant's argument under Article 15 is not that the court lacked the power to rule on its claims at all—only that it ruled too soon. Thus, even if Defendant's interpretation of Article 15 is correct (the court is not at all certain it is[16]), Defendant has forfeited these arguments by failing to timely raise them.

Defendant's invocation of Article 16, in any event, is merely a variation on its pleas for relief under Rule 60(b)(1) based on "excusable neglect." The only difference is that the timeliness issue with that provision (as discussed above) would not apply here, since the Convention sets a minimum one-year deadline for bringing applications for relief under Article 16. Regardless, Article 16's language is clearly permissive, not mandatory: it states that the judge "shall *have the power to*" grant relief if the stated conditions are met. Hague Service Convention art. 16, 20 U.S.T. at 365 (emphasis added). Defendant's arguments based on Article 16 thus fails for the

---

[16] As already noted, the Supreme Court in *Schlunk* interpreted Article 15 as a specific reaction to the practice of "notification au parquet," which did not require *any* proof whatsoever that the defendant had in fact been served. *See Schlunk*, 486 U.S. at 703 (noting that in this method of service, "the statute of limitations begins to run from the time that the official receives the documents, and there allegedly is no sanction for failure to transmit them"). Thus, the principal concern underlying Article 15 appears to be preventing defaults against defendants who lack *actual* notice of the action. *See Lonati, S.p.A. v. Soxnet, Inc.*, No. CV 20-5539-GW-JPRX, 2021 WL 9839476, at *2–3 (C.D. Cal. Sept. 20, 2021) (declining to enter default under Article 15 "without any indication of actual notice received by Defendants," but approving alternative service via email under Rule 4(f)(3) as a means of providing this notice). Paragraph (b) of Article 15 states that a court may enter judgment if "it is established that . . . the document was actually delivered to the defendant or to his residence by another method provided for by this Convention," as long as this service "was effected in sufficient time to enable [them] to defend." As this court has already found, email service is not prohibited under the Convention, and Electrician Guy has failed to raise a genuine question as to whether it timely received Plaintiff's emails. *See Burda Media, Inc. v. Viertel*, 417 F.3d 292, 301 (2d Cir. 2005) (noting that "the Hague Convention should be read together with Rule 4, which stresses actual notice, rather than strict formalism.").

same reason as its arguments under Rule 60(b)(1): it has submitted no proof, in the form of a sworn declaration or otherwise, showing that it "did not have knowledge of the document in sufficient time to defend," and the court is not convinced that it has any "prima facie defense to the action on the merits" worthy of disturbing the default judgment. *Id.*

In sum, service via email and electronic publication was proper under the Convention and the Federal Rules, and was reasonably calculated to provide notice of this action to Defendant. Consequently, there is no basis to vacate the court's default judgment as void for lack of jurisdiction.

## **CONCLUSION**

Defendant's motion to vacate the entry of default and default judgment [42] is denied.

ENTER:

Dated:  June 25, 2024

_____
REBECCA R. PALLMEYER
United States District Judge

25